UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FERNAN JARAMILLO, individually and on behalf
of others similarly situated,

                    Plaintiff,                  REPORT AND
                                                                  RECOMMENDATION
   -against-                                                  12 CV 5649 (NGG)(RML)

BANANA KING RESTAURANT CORP.,
BANANA KING, CORP., and ARLES VEGA,

                    Defendants.
-----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiff Fernan Jaramillo ("plaintiff") commenced this action on November 16, 2012 against Banana King Restaurant Corp., Banana King, Corp., and Arles Vega ("defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (2006), and the New York Labor Law, N.Y. LAB. LAW §§ 195, 650-665 (McKinney 2002). (Complaint, dated Nov. 8, 2012 ("Compl."), Dkt. No. 1.) On December 12, 2013, plaintiff moved for a default judgment against defendants (Plaintiff's Motion for Default Judgment, dated Dec. 12, 2013, Dkt. No. 15), and by order dated March 28, 2014, the Honorable Nicholas G. Garaufis, United States District Judge, referred plaintiff's motion to me for a report and recommendation. (Order, dated Mar. 28, 2014, Dkt. No. 16.) On May 13, 2014, I conducted a damages hearing at which plaintiff testified under oath (see Hearing Transcript, dated May 13, 2014), and on June 4, 2014, I issued a report and recommendation recommending that plaintiff's motion for a default judgment be granted. (Report and Recommendation, dated June 4, 2014, Dkt. No. 19.) By order dated June 30, 2014, Judge Garaufis adopted the report and recommendation and granted plaintiff's motion for a default judgment. (Order, dated June 30,

2014, Dkt. No. 20.) On July 2, 2014, judgment was entered against defendants, jointly and severally, in the total amount of $42,222.34. (See Judgment, dated July 2, 2014, Dkt. No. 21.)

On August 4, 2014, defendants moved to vacate the default judgment against them and to extend the time to answer plaintiff's complaint. (Motion to Vacate Default Judgment and Extend Time to Answer, dated Aug. 4, 2014 ("Def.'s Mot."), Dkt. No. 25.) On April 7, 2015, Judge Garaufis referred the motion to me for a report and recommendation. (Order, dated Apr. 7, 2015, Dkt. No. 33.) In view of the various claims made by both parties in support and in opposition to defendants' motion, I directed the parties to appear before me for a hearing. After granting defendants' request for an adjournment, I conducted the hearing on December 9, 2015. Both sides then submitted supplemental papers. (See Letter of Jason Andrew Gilbert, Esq., dated Dec. 16, 2015, Exs. 3 & 4, Dkt. No. 37; Letter of Jason Andrew Gilbert, Esq., dated Dec. 17, 2015, Exs. 1 & 2, Dkt. No. 38; Letter of Matthew W. Beckwith, Esq., dated Dec. 28, 2015, Dkt. No. 39.) For the reasons stated below, I respectfully recommend that defendants' motion be denied.

**LEGAL STANDARD**

Rule 60(b)(1) of the Federal Rules of Civil Procedure authorizes a court to relieve a party from a final judgment due to "excusable neglect." FED. R. CIV. P. 60(b)(1). In assessing whether to vacate a default judgment pursuant to the provisions of Rule 60(b), "the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005) (quoting State St. Bank & Trust Co. v. Inversiones

Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004)); see also SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).[1]

Because it is defendants who move to vacate, they bear the burden of demonstrating that their default was not willful, that they have a meritorious defense, and that no prejudice would result from reopening the judgment. State St. Bank & Trust Co. v. Inversiones Errazuriz, Limitada, 230 F. Supp. 2d 313, 316 (S.D.N.Y. 2002) (citing Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)). "This burden is not trivial: if the moving party fails to make even one of the three aforementioned showings, vacatur should be denied." Id.[2]

## DISCUSSION

Defendants argue that the default judgment should be set aside because all three of the above factors weigh in their favor. First, defendant Vega contends that his failure to respond to the complaint was not willful, but constituted excusable neglect. (Memorandum of Law in Support of Motion to Set Aside Default Judgment, dated Aug. 4, 2014 ("Def.'s Mem."), Dkt. No. 26, at 3-4) ("The record demonstrates that the default was the result of an honest, excusable error on the part of the defendant, who was without counsel and without access to the ECF.") In support of his motion, Vega claims a limited understanding of English and the American legal

---

[1] "Although the factors examined in deciding whether to set aside a default [under Rule 55(c)] or a default judgment [under Rule 60(b)] are the same, courts apply the factors more rigorously in the case of a default judgment . . . because the concepts of finality and litigation repose are more deeply implicated in the latter action." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); see also Peterson v. Syracuse Police Dep't, 467 F. App'x 31, 33 (2d Cir. 2012).

[2] At the same time, "[s]trong public policy favors resolving disputes on the merits." Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996); see also Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001); Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995).

system. (Id.; Affidavit of Arles Vega in Support of Motion to Vacate Default Judgment, sworn to Aug. 4, 2014 ("Vega 8/4/14 Aff."), Dkt. No. 25, ¶¶ 2, 13; Affidavit of Arles Vega in Further Support of Motion to Vacate Default Judgment and Extend Time to Answer, sworn to Oct. 13, 2014 ("Vega 10/13/14 Aff."), Dkt. No. 31, ¶¶ 7–8.) Vega further contends that he failed to answer or appear because he believed that the documents he received in connection with the present case were related to plaintiff's previously-filed workers' compensation claim, and that the attorney he had retained to address the workers' compensation claim would handle the matter, without any further action by defendants.[3] (Def.'s Mem. at 4; Vega 8/4/14 Aff. ¶¶ 12, 14–15; Vega 10/13/14 Aff. ¶¶ 5, 10, 13.)

In response, plaintiff asserts that defendant Vega is a "sophisticated and successful businessman[] [who] manages a growing business in the United States and thus even with his alleged limited knowledge of the United States laws and English language [] would be well aware of the difference between a Federal Law suit [sic] and a workers['] compensation claim." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Vacate, dated Sept. 29, 2014 ("Pl.'s Mem."), Dkt. No. 28, at 4.) Further, plaintiff contends that, in addition to initial service of the complaint, defendants received numerous other documents related to the present case, including plaintiff's request to enter default and motion for default judgment, as well as my April 10, 2014 order scheduling a damages hearing, all of which plaintiff claims defendants willfully ignored. (Id.)

---

[3] Plaintiff filed the workers' compensation claim in March 2012 after he allegedly fell and injured himself in the loading area of the restaurant during a delivery. (See Def.'s Mem. at 2, 4; Vega 8/4/14 Aff. ¶¶ 8–10.)

Second, defendants dispute plaintiff's title and responsibilities during his employment with defendants. They contend that plaintiff was an assistant manager whose duties included "the independent discretion to hire, fire, create the work schedule, discipline, and manage employees and order inventory," and that, as a result, he is an exempt administrative employee under federal and state wage and hour laws. (Def.'s Mem. at 7, 10–11; Vega 8/4/14 Aff. ¶¶ 6, 16–24; Vega 10/13/14 Aff. ¶ 3.) Defendants further argue that "overwhelming evidence establishes . . . plaintiff's claims to be a frivolous attempt at extracting unearned monies from the defendants." (Def.'s Mem. at 3.) In response, plaintiff contends that he was a "general employee with no specific title" whose "duties were at no time managerial in nature" and typically included "manual labor, including[] cleaning, cooking, busing, stocking the shelves and unload[ing] deliveries." (Pl.'s Mem. at 1; see also Affidavit of Fernan Jaramillo, sworn to Sept. 29, 2014 ("Pl.'s Aff."), Dkt. No. 29, ¶¶ 7–9.)

Defendant Arles Vega was the sole witness to testify at the hearing on December 9, 2015. (See Transcript, dated Dec. 9, 2015.) Mr. Vega stated that he is fifty-two years old, has two years of university education, and is the president and founder of Banana King Restaurant Corp., a fast food business he started twenty-five years ago, which operates in six locations. (Id. at 5, 6, 14, 16.) Although he was born in Colombia, he has lived in the United States for twenty-seven years. (Id.) He testified, through a Spanish interpreter, that he is conversant in English, but has "some difficulty" understanding and reading English. (Id. at 5-6.)

Mr. Vega explained that he personally hired plaintiff in approximately 2001 as a "general manager" of the Banana King restaurant at 83-17 Northern Boulevard in Jackson

Heights, Queens.  (Id. at 6-7, 18.)  He stated that plaintiff was responsible for hiring, inventory, and for "managing the money that came into the store."  (Id. at 8.)

Shortly after plaintiff left the company in 2012, he brought a workers' compensation claim against it for an injury he allegedly sustained on the job.  (Id. at 8-9.)  Mr. Vega testified that he retained an attorney to handle the workers' compensation matter, and he believed that the attorney received the documents related to that matter and "continued to manage it."  (Id. at 10.)  He stated that he could not recall when or where he learned of the instant lawsuit, but that "[t]he moment when I received the document, which was not a workers compensation issue, I referred it to my attorney," Paul Fernandez.  (Id. at 11, 14.)  He further stated that he could not recall how many documents he received concerning the instant case, or whether he received notice of a hearing or a motion for a default judgment.  (Id. at 21-22.)

After the hearing, defendants submitted three sets of documents to support their claim that plaintiff was an exempt manager:[4] (1) a set of records concerning petty cash, identifying plaintiff as "Manager" and containing his signature above that title, (2) a series of discipline notices, in which employees were written up for infractions, containing plaintiff's signature as "Manager," and (3) a set of employment applications and uniform order invoices identifying plaintiff as "Manager."  (See Letter of Jason Andrew Gilbert, Esq., dated Dec. 16, 2015, Dkt. No. 37, Exs. 1, 2; Letter of Jason Andrew Gilbert, Esq., dated Dec. 17, 2015, Dkt. No. 38, Exs. 1, 2.)

---

[4] I note that these documents are in Spanish and defendants have not provided an English translation.  It also bears noting that Mr. Vega appeared for the hearing on December 9, 2015 without a certified interpreter, but with the court's intervention, was able to hire plaintiff's interpreter to translate for him.

In his affidavit, filed in opposition to defendants' motion, plaintiff states that he was a "general employee" of defendants, and that his duties "primarily were cooking and preparing food, taking orders, cleaning, accepting deliveries, stocking shelves, and various other general labors." (Pl.'s Aff. ¶¶ 3, 7.) He further states that he was not a manager or assistant manager and did not have the authority to organize shifts, create the work schedule, supervise any employees, hire or fire employees, or manage inventory. (Id. ¶¶ 8-11.) Plaintiff also submitted documents after the hearing, showing that (1) when he had the accident in March 2012 that led to his workers' compensation claim, a manager named Alberto signed the accident report, and (2) on two occasions in July and August 2012, when the cash register was short at the end of plaintiff's shift, both plaintiff and a "Manager" signed a "Cash Journal Report." (Letter of Matthew W. Beckwith, Esq., dated Dec. 28, 2015, Dkt. No. 39, Exs. 1, 2.)

In light of the evidence presented in support and in opposition to defendants' motion to vacate, I will address the first element, willfulness. "The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). A finding of willfulness does not require bad faith. Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 634-35 (2d Cir. 1998). Rather, "'willfulness,' in the context of a default . . . refer[s] to conduct that is more than merely negligent or careless." McNulty, 137 F.3d at 738. It may be found "where the conduct of counsel or the litigant was egregious and not satisfactorily explained." Id. Where a party's default was willful, this factor alone is sufficient to deny a motion to vacate. See, e.g., Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co., 221 F.R.D. 410, 413 (S.D.N.Y. 2004) (denying motion to vacate default, even though defendant

demonstrated a meritorious defense and lack of prejudice to the plaintiff, where its excuse for defaulting was "about as lame as can be imagined" and its approach "lackadaisical."); see also Barnes v. Printron, Inc., No. 93 CV 5085, 1999 WL 335362, at *3 (S.D.N.Y. May 25, 1999) ("[A] finding of willfulness obviates the need to continue the inquiry with respect [to] the existence of a meritorious defense and prejudice."); Heymann v. Brechner, No. 95 CV 1329, 1996 WL 580915, at *3 (S.D.N.Y. Oct. 9, 1996) ("Amongst the[] [three] elements, willfulness is preeminent, and a willful default will not normally be set aside.") (citing Brien v. Kullman Indus., 71 F.3d 1073, 1077 (2d Cir. 1995)).

   Defendants ignored not one, but many documents concerning this case, including the summons and complaint, the Clerk's Entry of Default, plaintiff's motion for a default judgment, this court's order scheduling an inquest hearing, and my report and recommendation on damages. It was only when a judgment was entered against them that defendants finally retained counsel and moved to set aside the default, thirty-three days later. As plaintiff points out, Mr. Vega is neither naive nor unsophisticated. He is an educated, experienced businessman who owns and manages a company that operates six stores and employs dozens of people. His contention that he ignored the many court documents he and his company received because he assumed they related to the workers' compensation claim that his attorney was handling, is implausible at best.

   Even if it is true that Mr. Vega does not understand English or the American legal system well enough to interpret the legal documents his company received, forwarding the documents to his company's attorney would simply have been a matter of common sense, and he has no reasonable excuse for failing to do so. See Todtman, Nachamie, Spizz & Johns, P.C. v.

Ashraf, 241 F.R.D. 451, 454 (S.D.N.Y. 2007) ("[c]ourts have held the default to be willful when a defendant simply ignores a complaint without action."), aff'd, 316 F. App'x 51 (2d Cir. 2009); Am. Arbitration Ass'n, Inc. v. Defonseca, No. 93 CV 2424, 1997 WL 102495, at *2 (S.D.N.Y. Mar. 6, 1997) ("a lack of legal sophistication cannot form the basis of a claim of excusable neglect."); Solomon v. 318 Fashion, Inc., No. 93 CV 7699, 1994 WL 702008, at *1 (S.D.N.Y. Dec. 14, 1994) ("A defendant's lack of fluency in the English language does not form the basis of excusable neglect within the ambit of Rule 60(b) . . . . Nor does a pro se defendant's unfamiliarity with the legal system or ignorance of the law constitute excusable neglect."); Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp., 105 F.R.D. 113, 116 (S.D.N.Y. 1985) ("the lack of legal sophistication on the part of a corporation and its principal simply cannot form the basis of a claim of excusable neglect . . . for purposes of Rule 60(b).").

In short, defendants have failed to meet their burden of demonstrating that their default was not willful. It is therefore unnecessary to address the other two factors. See Adidas Spoerschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung, No. 87 CV 8989, 1990 WL 48063, at *2 (S.D.N.Y. Apr. 10, 1990) ("A finding of willfulness obviates the need to continue the inquiry with respect to the existence of a meritorious defense and prejudice to plaintiffs."); Bank of Montreal v. Mitsui Mfrs. Bank, No. 85 CV 1519, 1989 WL 135265, at *2 (S.D.N.Y. Nov. 2, 1989) ("A finding of willful default . . . concludes the Court's inquiry under Rule 60(b).").

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that defendants' motion to vacate the default judgment against them be denied. Any objections to this Report and

Recommendation must be filed within fourteen (14) days, with courtesy copies to Judge Garaufis and to my chambers, in order to preserve appellate review.  See 28 U.S.C. § 636(b)(1).

                                      Respectfully submitted,

                                      /s/
                                ROBERT M. LEVY
                                United States Magistrate Judge

Dated: Brooklyn, New York
       February 25, 2016